## Case No. 11,049.
PETTY v. MERRILL.
[See Case No. 9,211.]

## Case No. 11,050.
PETTY et al. v. MERRILL et al.
[9 Blatchf. 447.] [1]
Circuit Court, E. D. New York. Feb. 23, 1872.

COLLISION—MEASURE OF DAMAGES.

1. In a case of collision, the district court allowed, as an item of damages, $500, for depreciation in the value of the libellant's vessel, besides allowing $600 for future repairs. It appeared that the $600 would put the vessel in a seaworthy condition, and in as good and serviceable a condition as she was in before the collision; but the ship-builder testified, that, with such repairs, the vessel would not be as valuable, by $500, as before the collision, and that, there is a general damage, which vessels sustain when they come together, that they show when they grow old: Held, that the allowance of the $500 was improper.

2. When a vessel is made as serviceable as she was before, any conjecture that she is not as valuable, or that, when she is old, some damage will appear, as the result of the collision, not now discoverable, is too vague and uncertain to warrant the finding of the conjectural amount of damage.

This was an appeal by the respondents [Henry B. Merrill and others] from a decree of the district court, in a case of collision, in which the libellants' vessel, the schooner Mary Eveline [John W. Petty and others, owners], was damaged.

Franklin A. Wilcox, for libellants.
Richard H. Huntley, for respondents.

WOODRUFF, Circuit Judge. The allowance of five hundred dollars for depreciation in the value of the libellants' vessel, does not seem to me well sustained. The witness upon whose estimate it was allowed is the

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ship-builder, who estimates the future repairs required at six hundred dollars; and the six hundred dollars are allowed. He testifies to having the vessel on his ways before the collision, that he examined her all over, and that her condition was good. Again, he testifies that he had her on his ways just after the collision, and again examined her; and he specifies the particular injury she received. Being asked, on behalf of the libellants: "In your opinion, what repairs are still necessary to place the Mary Eveline in a seaworthy condition?" he says: "Six hundred dollars." Again: "In your opinion, what repairs are still necessary to place the Eveline in as good condition as she was before the collision?" He says: "Six hundred dollars." He enumerates the particulars of the injury, and, being asked: "What would it cost to repair the damages you have mentioned?" he again says: "Six hundred dollars." On cross-examination: "Do you mean to be understood that six hundred dollars will repair all the damages you saw when you examined the vessel, after the collision?" He answers: "It would." On re-direct: "As I understand, from your testimony, there are certain repairs, yet to be done to the Mary Eveline, to place her in as serviceable a condition as she was before the collision; please state what it will cost?" Again, for the fifth time, he answers: "Six hundred dollars." This is very distinct evidence, by the libellants' own witness, that the expenditure of six hundred dollars will repair all the damages, will place the vessel in as good a condition as she was before the accident, and will place her in as serviceable a condition as she was before the collision. Nevertheless, in answer to a species of cross-examination by the libellants' counsel, on inquiry: "Would six hundred dollars place the schooner in as good a condition as she was previous to the collision?" He replies: "It would not." "With the repairs which you have mentioned, would the vessel be as valuable as she was previous to receiving the injury sustained by the collision?" "The vessel would not be worth as much, by five hundred dollars, after these repairs, as before the collision." It is after this testimony, that he testifies, in answer to the libellants, that six hundred dollars would place her in as serviceable a condition as she was before the collision; and, by way of further explanation, on cross-examination, he says: "There is a general damage, that vessels sustain when they come together, that they show when they grow old."

I am not satisfied, that, upon such testimony, five hundred dollars should be allowed, in addition to the cost of the repairs. It rests upon no certain or definite grounds, for an estimate. The witness had stated all the cost of making the vessel as good as she was before; and then, having stated that she would, nevertheless, not be so valuable, he states that she would be as serviceable; and,

finally, the cross-examination shows that his estimate of five hundred dollars less in value rests upon a conjecture, based upon what he states as a general result of all collisions,— that the vessels sustain a damage that "will show when they grow old." This is altogether too vague, uncertain and unreliable, to warrant the inference, as a fact, in this particular case, that, beyond any injury which the witness could detect, by his careful examination as an expert in building and repairing vessels, she had, also, received some undiscovered and undiscoverable damage, which, although it did not render her less serviceable, yet detracted five hundred dollars from her value, because it would show when she was old. The elements of calculation, or of estimate of amount, are wanting. Palpably, the assumed fact of such hidden injury, and its extent and character, are conjectural, and the amount of money required as an indemnity is even more so. It may be conceded, that the shock of a violent collision will be felt throughout the vessel; but the injury from that cause, if any, is not to be estimated, and cannot be determined, as a fact, in a court of justice, by reasoning upon any general rule, such as appears to have guided the witness, if, indeed, his estimate was anything more than a rough guess, without any specific facts to support it. No two collisions are alike in any of their circumstances or results. The injury in any given case must be quite peculiar, if the skill of the shipbuilder, at liberty to employ all the expense requisite, is incapable of repairing it; and, when a vessel is made as serviceable as she was before, any conjecture that she is not as valuable, or that, when she is old, some damage will appear, as the result of the collision, not now discoverable, is too vague and uncertain to warrant a finding of the conjectural amount of damage. There may be proof of injury, which, though known, cannot be repaired without unreasonable cost, where the party in fault will be benefited by an allowance for actual depreciation, because an attempt to make complete repairs would involve an expense greatly disproportionate to the amount of such depreciation. But, in general, estimates of depreciation, founded in speculative opinions of the probable effect of a collision, where no such effect is known or discernable, and estimates of diminished value, founded as they sometimes are, upon the idea, that, although the vessel is as serviceable as she was before, yet she will not sell for so much as she would before are not of sufficient reliability to warrant the taking of the money of one party and awarding it to another. See, on this subject, The Isaac Newton [Case No. 7,091]; The St. John [Id. 12,224]; The Favorita [Id. 4,695].

The sum of five hundred dollars allowed to the libellants, for supposed depreciation in the value of the vessel, must be disallowed.

[See note to Case No. 9,211.]