### THE STATE OF CALIFORNIA.

### THE PORTLAND.

### SIMPSON et al. v. THE STATE OF CALIFORNIA.

### PACIFIC COAST STEAMSHIP CO. v. THE PORTLAND et al.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1893.)

1. COLLISION—MEASURE OF DAMAGE.
   The measure of damages to a vessel injured by collision with another vessel wholly or partially in fault is the value of the use of the injured vessel during the time of the actual, necessary detention; and such value can be determined by evidence showing the number of days lost while

undergoing repairs, the average daily earnings for a period six months prior and six months subsequent to the collision, from which the court can determine the vessel's capacity, and the condition of the trade in which she was engaged, as well as from expert testimony.

**2. SAME.**

That another vessel belonging to the same owner was substituted for the disabled vessel during her detention will not affect the right to compensation, nor is it a cause for awarding less than if such substitute was not available.

**3. SAME—COMMISSIONER'S REPORT.**

On a libel for damages caused by collision, where both vessels were found in fault, the damages and costs ordered to be divided equally, and the assessment of damages referred to a commissioner, an appellate court will not assume that the commissioner awarded interest to one vessel and not to the other, where no indication or intention to discriminate appears in the record, and by a prior report he awarded interest to both vessels.

**4. SAME—COST OF REPAIRS.**

The bill for services of a part owner, who voluntarily and without request devotes a portion of his time to overseeing repairs to a vessel injured by collision, is not a part of the cost of repairs, for which award should be made, where it does not appear that there was any necessity for such services, that they were of any value, or that the bill had been paid, or payment thereof promised by his co-owners.

**5. SAME—DAMAGE TO CARGO—EVIDENCE.**

By a collision at sea, a vessel with a cargo of lumber became waterlogged, was towed into port, beached, and, in consequence of being grounded on the flats, her cargo was stained by muddy water, slime, and mud. *Held,* that vague and indefinite evidence, which failed to show any necessity for beaching the vessel before discharging her cargo, or with any precision even approximately showed what portion of the cargo was damaged, though competent witnesses were available and not called, no reason being given for the omission, was insufficient as a basis for an award.

**6. SAME—COMMISSIONER'S REPORT—EVIDENCE.**

Testimony as to damages sustained by a collision, taken on the first trial, and considered on the second, is sufficient, without recalling the witnesses to repeat their testimony, to sustain the findings of a commissioner to whom the computation of damages has been referred, where the parties have had the benefit of their legal rights in the matter of exceptions to the evidence.

**7. SAME—APPEAL—COSTS—MANDATE.**

In a collision case, the failure of the circuit court of appeals to decree costs to appellants on their appeal, even if intentional, affords no ground for complaining of a subsequent decree of the district court, for the error, if any, should have been corrected by motion in the appellate court before the mandate issued.

Appeal from the District Court of the United States for the Northern District of California.

In Admiralty. Libel by A. M. Simpson and others, owners of the barkentine Portland, against the steamship State of California, for damages resulting from a collision. Cross libel by the Pacific Coast Steamship Company, owner of the State of California, against the Portland, for damages sustained in the same collision. The libel against the steamship was dismissed in the district court, and at the same time an interlocutory decree was entered against the Portland on the cross libel, and the cause was referred to a master to ascertain the damages. 46 Fed. Rep. 877. An appeal was then taken from the decree dismissing the

libel against the steamship, which decree was affirmed by the circuit court. An appeal was thereupon taken to the circuit court of appeals. The case against the Portland remained in abeyance until the decree of the circuit court, and thereafter the order of reference to ascertain damages was carried out, and a final decree entered against the Portland. From this decree an appeal was taken by her owners direct to the circuit court of appeals. The causes were heard together in the circuit court of appeals, which held that both vessels were in fault, and that the case was one for divided damages, and entered the following decree:

"The decree of this court will be that the decrees in the cases of the Portland and the State of California are both reversed, and that they both be remanded to the district court, and there consolidated and tried as one case, upon the question of the amount of damage sustained by the Portland and State of California, respectively, by reason of the collision; and that, if either is shown to have sustained more damage than the other, the lesser sum, with the costs of libelant in such case, shall be deducted from the greater sum, with costs, and the party sustaining the greater loss shall have a decree for the one half of the remainder." 49 Fed. Rep. 172.

The causes were accordingly remanded, and were again heard in the district court, which entered a decree in favor of the owners of the California in the sum of $2,371.69. From this decree the claimants of the Portland now appeal. Affirmed.

E. W. McGraw and Charles Page, for the Portland and A. M. Simpson et al., claimants.

George B. Merrill, for the State of California and Pacific Coast Steamship Company, claimants.

Before GILBERT, Circuit Judge, and HANFORD and HAWLEY, District Judges.

HANFORD, District Judge. This case comes before this court a second time by appeal from the district court for the northern district of California, this court having upon the former hearing remanded it for the purpose of assessing the damages to both vessels. Upon the last hearing in the district court no new evidence relating to the damages sustained by the State of California was offered in behalf of either party, and upon the evidence taken prior to the former appeals the court awarded the same amount of damages as by its first decree, with accrued interest and costs, amounting to the total sum of $16,050.43. The court received evidence as to the damages sustained by the Portland, and determined the amount thereof, with interest and costs, to be $11,307.05, and decreed that the Pacific Coast Steamship Company, owner of the State of California, recover from the claimants of the Portland the sum of $2,371.69, being one half the difference between the amounts above stated.

The questions now to be considered relate entirely to items allowed in favor of the State of California and to items claimed by the owner of the Portland which were disallowed by the district court, no appeal having been taken by the claimant of the State

of California. The items in dispute are all stated in the assignment of errors, and they will be disposed of in the order therein set forth.

The first assignment specifies no error, and the second is unimportant. Both may be passed without further consideration.

The gist of the grievance alleged in the third assignment is that the evidence does not warrant an allowance for demurrage to the State of California for her detention while undergoing repair, and in the argument it is insisted that the amount allowed was arrived at by an improper rule for estimating demurrage. The right to compensation for loss sustained by actual detention of a vessel in consequence of a collision with another vessel found to be wholly or partially in fault is settled by numerous decisions and the uniform practice of the courts of this country, and it is our opinion that the value of the use of the injured vessel during the time of actual, necessary detention is the proper measure of the amount to be allowed. While the evidence in this case does not contain opinions or estimates of the value of the use of the steamship during the time of her detention of persons having knowledge qualifying them to testify as experts, it does show the facts as to the number of days lost while the damages caused by the collision were being repaired, and shows the average daily earnings of the vessel for a period extending from six months prior to the end of six months subsequent to the date of the collision, from which the court could as well determine the capacity of the ship and the condition of the trade in which she was then engaged, and make a fair estimate of the value of her use during the time of her detention, as from expert evidence. The fact that another vessel belonging to the same owner was used as a substitute for the disabled steamer during the time of her detention should not militate against the right to compensation, nor afford just cause for awarding less than would be allowed if the owner, from lack of enterprise or inability, failed to have an available substitute for use in such an emergency. Upon consideration of the evidence, we are satisfied that the amount allowed for demurrage is reasonable.

The fourth, fourteenth, and seventeenth assignments are general, and specify no error.

The fifth, thirteenth, and fifteenth assignments relate to the interest allowed on disbursements for repairs to the steamer, and they are inconsistent with each other. In the fifth the complaint is that the court erred in overruling an exception to the report of the commissioner, who, under an order of reference, took the evidence, and made findings as to the amount of damages sustained, which exception is on the ground that the commissioner allowed interest on disbursements. The thirteenth specifies as error that it appears by the report of the commissioner, "that the damage suffered by the State of California was $11,876.05, where said decree recites it as being $16,050.43." In his argument the proctor for the appellants concedes that the difference between the two amounts can be accounted for by adding to the lesser sum

costs and interest, and attacks the interest item, not on the ground of inaccuracy in the computation, nor because interest in such a case is unlawful, but because, as he asserts, the commissioner discriminated by allowing interest on disbursements for repairs to the Portland, and allowed no interest to the appellee, and in justifying the report as construed by him he uses the following language in his brief:

"Now, in cases of collision, interest is not a matter of right. It does not necessarily follow from an award of damages. It is a matter of discretion, to be awarded or not awarded, according to the equities of the case; and where both vessels are in fault the degree of fault is to be considered in awarding interest. The North Star, 44 Fed. Rep. 492; The Alaska, Id. 498. The commissioner, exercising his discretion, awarded interest to the Portland, and not to the State of California. That report, not having been excepted to by respondent, and having been confirmed by the court below, is not open to exception or impeachment by the respondent in this court."

This is quite ingenious, but may be well answered in two ways: First. The record shows that by a supplemental report filed May 10, 1892, the commissioner submitted the testimony taken, and his report made on the first hearing, relating to the damages to the State of California, and the order of the court based thereon, by which it appears that interest on disbursements from dates of payments was allowed in the same words as in his award of interest to the appellants as per his last report; and there is in the record no indication of an intention on the part of the commissioner to discriminate by disallowing interest to the appellee. On the contrary, he did award interest as stated in the fifth assignment. Secondly. This court decided that both vessels were in fault, and ordered that the damages and costs be divided between them equally. We will not presume that the commissioner, upon a subsequent reference of the case to him, disregarded the rule for apportioning the losses promulgated by that decision, and distinctly set forth in the mandate.

The sixth assignment specifies error in disallowing a bill of $100 in favor of Capt. Trask, a part owner of the Portland, for his services in superintending the repairs to said vessel. We hold that this item was properly disallowed. The evidence shows that Capt. Trask voluntarily devoted a portion of his time to overseeing the repairs, without being requested to do so by his co-owners, although it was the business of Capt. R. W. Simpson, as the ship's husband, to superintend the repairing of the vessel; and it is not shown that there was any necessity for the assistance alleged to have been rendered by Capt. Trask, nor that his services were of any value, nor that his bill has been paid, or payment thereof promised, by his co-owners.

The seventh assignment is for alleged error of the court in refusing to allow any sum for damages to the Portland's cargo of lumber. If, in fact, injury to the cargo resulted from the collision, compensation therefor should have been awarded. There is testimony that the value of part of the lumber was impaired by mud and sand. The collision occurred at sea, and by reason of her injuries the Portland became water-logged. She was towed into the

port of San Francisco and beached, and it is in consequence of being grounded on the flats in the harbor that muddy water, slime, and sand got into the vessel, and stained the lumber, causing the damage complained of. The evidence does not show that it was necessary to beach the vessel before discharging her cargo, and the court has no right to take it for granted. The evidence does not show with anything like precision, or even approximately, what portion of the cargo was damaged, and, although witnesses cognizant of the facts, and presumably able to give the figures, were in San Francisco when the evidence was taken, they were not called, and no reason has been assigned for this omission. The only evidence in the record to support this claim is too vague and indefinite to warrant anything more than a mere surmise as to the amount of the loss, if any, sustained by damage to the cargo. Having failed to support their claim as to this item by necessary proof, the appellants cannot reasonably expect the court to base an award to them upon mere speculation as to the amount of the loss to be compensated for.

The eighth and twelfth assignments relate to costs, and are without merit, for it affirmatively appears that in the decree rendered by the district court the costs of both parties were taxed and included in the allowance made to each respectively, and our attention has not been directed to any item of costs claimed by the appellants and disallowed by the district court, or any item improperly allowed to the appellee.

The ninth, tenth, and eleventh assignments relate to the method of procedure by which the district court arrived at the amount of damages to the State of California, and it is therein assumed that the mandate of this court required the district court to disregard the evidence taken previous to the first appeals, relating to the damages sustained by the State of California, and to call the witnesses again before the court to repeat their testimony. The testimony upon the first trial of the case was reported, and is preserved in the record, and, having been duly offered and considered on the second trial in the district court, we regard it as sufficient evidence to sustain the findings as to the damages sustained by the State of California. In the consideration which we have given to the particular objections made to the several items allowed to the appellee, the appellants have had the benefit of all their legal rights in the matter of exceptions to said evidence.

By the sixteenth assignment the appellants complain that the district court erroneously refused to allow them full credit for their costs upon their first appeals to this court. This is based upon the assumption that this court, upon the former hearing, by its decrees, awarded costs to them. The decrees, however, do not go to the extent of awarding costs, except by directing that the costs in general of the litigation should be added to the damages, and divided between the parties. Under the rules the appellants were entitled to recover the full amount of costs taxable in this court, unless the court ordered otherwise; but the failure of this court to decree that the appellants should recover costs on their appeals, if inten-

tional, would afford no ground for complaining of error in the decree of the district court, and, if due to a mere inadvertence in drafting the decree, the error should have been corrected by a motion in this court before the mandate issued. The question is not open to discussion upon the present appeal.

We affirm the decree of the district court, with costs to the appellee, and direct that the cause be remanded to the district court for further proceedings to execute said decree.